**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| DAVID L. VORNHOLT, | : | Case No. 1:25-cv-812 |
| | : | |
| Appellant, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CLERMONT COUNTY TREASURER, | : | |
| | : | |
| Appellee. | : | |
| | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Appellant's Motion for a Temporary Restraining Order and a Stay and a Preliminary Injunction (Doc. 2). The Court will only consider Appellant's Motion for a Temporary Restraining Order at this time. The parties met with the Court for a telephonic conference on November 24, 2025, as to this Motion, *see* S.D. Ohio Civ. R. 65.1(a), and it is now ripe for review. (*See* Response, Doc. 3; Reply, Doc. 4.) For the reasons explained below, the Court **DENIES** Appellant's Motion for a Temporary Restraining Order (Doc. 2)**.**

### BACKGROUND

This action arises as an appeal from a United States Bankruptcy Court Order that imposed a partial stay pending bankruptcy proceedings. (*See* Notice of Appeal, Doc. 1; Bankruptcy Orders, Doc. 1, Exs. A and B, Pg. ID 3-18.) Specifically, the appeal centers on the bankruptcy court's denial of a stay as to creditor Clermont County Treasurer. (*Id.*)

Appellant/Debtor David Vornholt ("Appellant") owns two historical properties in New Richmond, Ohio: 310 Susanna Way and 314 Susanna Way (collectively, "Properties"). (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 6-7.) Appellant has resided at 310 Susanna Way and operated 314 Susanna Way as, first, a bed and breakfast and then a rental property. (*Id.* at Pg. ID 7-8.) In 2018 and 2021, renters of the Properties contacted the fire department of the Village of New Richmond to express their concerns that the structures felt unsafe. (*Id.* at Pg. ID 8.) In December 2021, the Village of New Richmond's Certified Fire Safety Inspector investigated the Properties and issued citations for hazards and unsafe conditions. (*Id.*) At a follow-up inspection thirty days later, Appellant had not abated these violations. (*Id.*)

Several years later, on February 9, 2025, a fire occurred at 310 Susanna Way, causing extensive damage; Appellant's brother and other tenants had been living at the building and evacuated. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 8.) A few days later, the fire department visited the other property, 314 Susanna Way, and witnessed several safety hazards. (*Id.*) As a result of the hazards at both Properties, the fire department informed Appellant that no one was permitted to reside there. (*Id.* at Pg. ID 8-9.) Appellant agreed that repairs needed to be made and that he was making them slowly. (*Id.* at Pg. ID 9.) Ten days after the fire, the Clermont County Board of Commissioners concluded that the Properties were unlivable; a building code official told Appellant that he had thirty days to comply with the orders by requesting permits and completing repairs. (*Id.*)

2

Meanwhile, Appellant owed real estate taxes on the Properties, with delinquencies dating back to between 2007 and 2009. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 9-10.) Tax records show that Appellant had paid some taxes over the years, but significant tax delinquencies remained on the Properties, as well as on Appellant's other properties in the county. (*Id.*) In February 2012, Appellee Clermont County Treasurer filed complaints in foreclosure for the delinquent real estate taxes that Appellant owed and then obtained consent judgment entries of foreclosure in September 2012. (*Id.* at Pg. ID 10.) Pursuant to those consent judgment entries, the orders to sell the Properties were held in abeyance so that Appellant could enter into delinquent tax contracts with Appellee to pay the taxes over a period of time. (*Id.*) However, Appellant defaulted on the payment. (*Id.*) The terms of the consent judgment entries allowed for the sale of the Properties upon default. (*Id.*) Following default, the Properties were scheduled for sheriff sales. (*Id.*) But, just a day before the scheduled sales, Appellant filed a Chapter 13 bankruptcy petition, preventing the sale from proceeding. (*Id.*) The bankruptcy case was dismissed a few months later for Appellant's failure to file documents. (*Id.*)

This pattern continued four more times over the following ten years. Appellant would enter into delinquent tax contracts to repay taxes, default on those contracts, and Appellee would set the Properties for sheriff sales. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 10-12.) Then, Appellant would file for Chapter 13 bankruptcy not long before the sale date, causing an automatic stay that prevented the sale, only to have the case dismissed later for either failure to file documents or failure to make payments. (*Id.*) The final attempt to avoid a sheriff sale occurred with Appellant's most recent filing for Chapter

3

13 bankruptcy, the subject of this appeal. However, pursuant to 11 U.S.C. § 362(c)(4)(A)(i), no automatic stay of the sale went into effect when he filed the present case because Appellant had filed two bankruptcy cases within the same year as the present one. (*Id.* at Pg. ID 12, 14.) Appellant then filed a Motion to Stay to prevent the sale from proceeding. (*Id.* at Pg. ID 14.) But, due to court scheduling conflicts, the sheriff sales of the Properties took place before the bankruptcy court could adjudicate the Motion, and the Properties were sold for $96,000 and $90,000, respectively. (*Id.* at Pg. ID 12-13.) Appellee, though, agreed not to file a motion to confirm the sales until the bankruptcy court had adjudicated Appellant's Motion to Stay. (*Id.* at Pg. ID 13.)

Following the sheriff sales, but before the bankruptcy court ruled on the Motion to Stay, Appellant filed a Motion to Sell the Properties to another individual for a total of $240,000, which is $54,000 more than the expected proceeds from the sheriff sales. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 13.) The new buyer promised to rehabilitate the Properties to conform with code and allow Appellant to live on the premises rent-free for the rest of his life. (*Id.*) Additionally, the proceeds from the sale would allow Appellant to pay his creditors in full. (*Id.* at Pg. ID 13-14.) Nevertheless, Appellee opposed the Motion to Stay, as did another creditor, Minster Bank. (*Id.* at Pg. ID 12-13.) Minster Bank, though, after learning of Appellant's proposed sale and subsequent motion to sell, changed its position and no longer opposed the Motion to Stay. (*Id.* at Pg. ID 13-14.) Thus, at the end of the day, only Appellee opposed the Motion to Stay.

The Court also notes that, in April 2025, Appellant had attempted to pay his delinquent property taxes in full. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 11.) Appellee

4

refused the payment because of the code violations discovered on the Properties, even though Appellee had accepted prior payments after the violations were discovered in 2021. (*Id.*) Appellant believes that this refusal may relate to the county's plans to develop the surrounding area. (*Id.* at Pg. ID 12.)

## PROCEDURAL POSTURE

The bankruptcy court denied the stay as to Appellee, finding that Appellant's Chapter 13 bankruptcy filing was not put forth in good faith. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 5-18.) On November 7, 2025, Appellant filed the Notice of Appeal in this Court to appeal the Bankruptcy Court Order as to Appellee. (*See* Notice of Appeal, Doc. 1.) Then, on November 24, 2025, Appellant filed the presently pending Motion for a Temporary Restraining Order and a Stay and a Preliminary Injunction Pending Appeal to prohibit Appellee from confirming the sheriff sales of the Properties. (*See* Motion, Doc. 2.) The parties met with the Court telephonically the same day, in accordance with S.D. Ohio Civ. R. 65.1(a), and the Court set a briefing schedule. The parties have since fully briefed the Motion (*see* Docs. 3, 4); the matter is now ripe for the Court's review.

## LAW & ANALYSIS

Federal Rule of Civil Procedure 65 empowers the Court to issue a temporary restraining order against an adverse party. Fed. R. Civ. P. 65(b). The purpose of issuing a temporary restraining order is to preserve the status quo. *CUC Props., LLC v. 1680 Carillon, LLC*, No. 1:12-CV-71, 2012 WL 540560, *1 (S.D. Ohio Feb. 17, 2012). This Court must consider four factors when determining whether to grant or deny a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2)

5

whether the movant would suffer irreparable injury without the [temporary restraining order]; (3) whether issuance of the [temporary restraining order] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the [temporary restraining order]." *Id.* (citing *Chabad of S. Oh. & Congregational Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)).

## I.     Likelihood of Success

Failure to meet the likelihood-of-success prong is not dispositive. *See Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985). But, "if the movant has not demonstrated a high likelihood of success on the merits, preliminary equitable relief is permissible only if there are serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if [a TRO] is issued." *Touray v. Lynch*, No. 1:25-CV-683, 2025 WL 2778271, at *2 (S.D. Ohio Sept. 30, 2025) (citing *Frisch's*, 759 F.2d at 1270). And, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)); *see also Commonwealth v. Biden*, 57 F.4th 545, 550 (6th Cir. 2023) (highlighting the importance of the likelihood-of-success prong).

Given the posture of this matter, the Court begins by identifying the proper standard of review. "[T]he appropriate standard of review in the instant case is abuse of discretion." *In re Akron Thermal, Ltd. Partnership*, 414 B.R. 193, 203 (N.D. Ohio 2009). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal

standard." *In re Hake*, 398 B.R. 892, 896 (B.A.P. 6th Cir. 2008), *aff'd*, 348 F. App'x 80 (6th Cir. 2009) (quoting *Volvo Com. Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (6th Cir. BAP 2005) (citing *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (6th Cir. BAP 2000))). Or, a court abuses its discretion if, upon review, the reviewing court is left with a "definite and firm conviction that the [bankruptcy court] committed a clear error of judgment." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 612 (6th Cir. 2000) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor and City Council of Baltimore, Md. v. W. Va. (In re Eagle–Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002). This standard of review guides the Court's analysis of Appellant's likelihood of success on his appeal. Appellant argues that the Court's standard of review is clear error for findings of fact but de novo for questions of law. (Reply, Doc. 4, Pg. ID 114-15.) But, even adopting this proposed standard of review, the Court would reach the same conclusion.

Pursuant to 11 U.S.C. § 362(c)(4)(A)(i), Appellant's prior bankruptcy filings in the same year as his current petition precluded an automatic stay. Accordingly, Appellant moved for a stay under 11 U.S.C. § 362(c)(4)(B). A court's decision to impose a stay in such cases centers on whether a debtor presents clear and convincing evidence to overcome the presumption of bad faith in making multiple bankruptcy petition filings in

7

one year. *See* 11 U.S.C. § 362(c)(4)(B), (D). In identifying good faith, many bankruptcy courts have applied a "totality of the circumstances" approach considering a variety of factors such as: (1) the timing of the petition; (2) the types of debts sought to be discharged and the circumstances under which they arose; (3) the debtor's motive; (4) the debtor's treatment of creditors both before and after the petition was filed; (5) the frequency of the debtor's bankruptcy filings and reasons why the debtor's prior cases were dismissed; (6) the likelihood that the debtor will have steady income sufficient to fund a plan; and (7) whether any party objects to the motion. *See In re Blankenship*, No. 1:25-BK-11129, 2025 WL 182114, at *4 (Bankr. E.D. Tenn. July 1, 2025) (citing *In re Riedy*, 517 B.R. 88, 91 (Bankr. W.D. Mich. 2014)); *see also In re Vonderhaar*, No. 12-14322, Doc. 34, pp. 4-5 (Bankr. S.D. Ohio Oct. 18, 2012). The bankruptcy court found no sufficient evidence of good faith. (*See* Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 6.) For the following reasons, this Court finds the same.

Beginning in 2014, Appellant has engaged in a pattern of filing Chapter 13 bankruptcy petitions in order to avoid paying real estate tax delinquencies and the subsequent consequence to those delinquencies: foreclosure on the Properties. Of the four previous filings, all four petitions were dismissed either for Appellant's failure to file documents or failure to make payments. In other words, Appellant's own dereliction caused the dismissal of his prior petitions.

On his most recent attempt to avoid sheriff sales of the Properties, Appellant did not receive the immediate shelter from sale that the automatic stay had provided in the past; instead, he needed to present clear and convincing evidence to overcome the

8

presumption that his fifth bankruptcy filing was made in bad faith. To do so, Appellant provided testimony that he had secured another buyer for the Properties who had also promised to abate the code violations. (*See* Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 13; *see also* Contract to Sell Real Property to William Deavers, Doc. 2-1, Pg. ID 71-75.) The bankruptcy court indicated that the potential buyer, Deavers, had signed a letter of intent pertaining to the agreement in August 2025. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 13.) However, the Court notes that this contract for sale was signed on September 8, 2025, over a month *after* Appellant filed his fifth Chapter 13 bankruptcy petition on July 28, 2025, and Appellee held the sheriff sales. (Contract to Sell Real Property to William Deavers, Doc. 2-1, Pg. ID 75.) Put simply, the sale contract in September does not, and indeed, cannot, show that Appellant acted in good faith in July. And, assuming the parties did agree to the sale in August, it still occurred after the bankruptcy filing. While Appellant argues that the bankruptcy court called the terms of the sale a "win-win" as evidence of his good faith, the timing of the contract indicates that the arrangement was yet another last-ditch effort to prevent foreclosure.

Appellant attempts to argue that he filed this fifth petition in good faith by relaying that, in his fourth petition, his counsel negligently failed to file Schedules and a Chapter 13 Plan. (Motion, Doc. 2, Pg. ID 63-64.) And, Appellant is correct that negligence of an attorney can qualify as a substantial excuse for repeat filings. (*Id.*; *see also* 11 U.S.C. § 362(c)(4)(D)(i)(II).) But, Appellant is incorrect to state that, but for this fourth petition, his case would have an automatic stay, as 11 U.S.C. § 362(c)(4)(D)(i)(II) provides just *one* scenario where bad faith is presumed, and where attorney negligence counts as

substantial excuse. Importantly, subsection (I) of that section provides that bad faith is presumed if two previous petitions have been filed within the past year and both have been dismissed, which is what occurred here. 11 U.S.C. § 362(c)(4)(D)(i)(I). The statute provides that any of the three listed scenarios create a presumption of bad faith, and Appellant's case falls into the first stated scenario. *See generally* 11 U.S.C. § 362(c)(4)(D)(i).

Next, Appellant notes that he attempted to pay his tax delinquencies in full after his third petition was dismissed as evidence that he will likely succeed on the merits of his appeal. (Motion, Doc. 2, Pg. ID 63.) However, the Court is not persuaded by this argument. Appellee cited Ohio Revised Code § 5721.25 for its authority to refuse payment based on building code violations. (Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 17, n.8.) As the bankruptcy court noted, to the extent that Appellant believes Appellee had no right to refuse his tax payments, this is a question to bring in the tax foreclosure litigation in state court. (*See id.*) This issue, therefore, does not add to Appellant's likelihood of success on his appeal; put simply, it speaks to his efforts to cure the tax delinquencies but not his good faith filing of his bankruptcy petition. Furthermore, Appellant made no attempts to abate the code violations after learning that Appellee would not accept payments with the existing violations. If anything, the continued violations amid his tax delinquencies cut against any argument of good faith.

As Appellee points out in response, Appellant balances "good will, financial resources, and historical reverence" to show a likelihood of success on the merits, but none of these considerations are relevant to the question before this Court: whether the bankruptcy court erred in finding that Appellant did not file his fifth petition in good

10

faith. (*See* Response, Doc. 3, Pg. ID 107-08.) Appellant argues, in his Reply, that the appeal encompasses the question of which sale should be consummated. (Reply, Doc. 4, Pg. ID 115.) But, the Notice of Appeal in this Court explicitly states that the denial of stay as to Appellee is the sole issue for review. (Notice of Appeal, Doc. 1, Pg. ID 1.) In the instant Motion, Appellant speaks extensively on "the quality of his proposed property sale" and the "animus" Appellee may have towards him. (Response, Doc. 3, Pg. ID 109; Reply, Doc. 4, Pg. ID 118.) But, these arguments fail to demonstrate that Appellant can overcome the presumption of bad faith to warrant a stay.

Moreover, Appellant brings up 11 U.S.C. § 362(c)(3) to argue that an automatic stay should be in place with regard to the Bankruptcy Estate, even if a debtor had filed a previous petition that was dismissed. (Reply, Doc. 4, Pg. ID 117.) While Appellant is correct about the law, he is incorrect that it applies here. Instead, 11 U.S.C. § 362(c)(4) applies, as Appellant had not one but two previous bankruptcy petitions pending within a year. *See* 11 U.S.C. § 362(c)(4)(A)(i).

In sum, since 2014, Appellant has filed five Chapter 13 bankruptcy petitions, all perfectly timed to avoid looming foreclosure on the Properties. And, with each petition, Appellant has failed to follow through with the bankruptcy proceedings' requirements. Following those dismissals, he has defaulted time and again on his tax payment contracts, starting the cycle over. "[M]ultiple bankruptcy filings are an abuse of the bankruptcy process," and "[g]ood faith cannot equate to an intention to take advantage of the automatic stay while seeking to avoid compliance with the mandates of a bankruptcy reorganization." *In re Blankenship*, 2025 WL 1821144, at *5-6. For these reasons, the Court

11

finds that Appellant has not shown, at this time, a likelihood of success on the merits, a finding that is "usually fatal" to injunctive relief. *See Gonzales*, 225 F.3d at 625 (citing *Mich. State AFL-CIO*, 103 F.3d at 1249).

## II.     Irreparable Harm

Nevertheless, the Court next considers the irreparable harm factor. As recently emphasized by the Sixth Circuit, "while the *extent* of an injury may be balanced against other factors, the existence of an irreparable injury is mandatory." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025) (quotation omitted); *see also Blount Pride, Inc. v. Desmond*, 690 F. Supp. 3d 796, 807 (E.D. Tenn. 2023) (explaining that the irreparable harm inquiry receives "increased emphasis" in the temporary restraining order context). To establish irreparable harm, a movant must show that he is at risk of suffering some certain and immediate harm that is not fully compensable through monetary damages. *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025).

Appellant primarily frames his irreparable harm argument in terms of dollars and cents. Specifically, Appellant asserts that denial of injunctive relief would cause anywhere between $209,594.77 and $500,000 in damages due to a lower sale price, the absence of a reduced claim from Minster Bank, and the loss of rent-free living. (Motion, Doc. 2, Pg. ID 64-65.) Although neither party mentions it, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

Consequently, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (quoting *Sampson*, 415 U.S. at 90); *see also Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Courts have simultaneously recognized that "[w]here the availability of a money damage remedy is significantly in doubt because of an immunity defense, money damages are not deemed an adequate remedy, rendering the harm irreparable." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 641 (E.D. Mich. 2015) (collecting cases).

At the same time, Appellant argues that denial of his requested relief will lead to the sheriff sales of the Properties—as opposed to an alternative sale arrangement in which he would be permitted to live at one of the Properties rent-free. (Motion, Doc. 2, Pg. ID 64; Bankruptcy Order, Doc. 1, Ex. B, Pg. ID 16.) This hints at irreparable harm given that particular pieces of residential real property are unique. *See Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001) (explaining that the plaintiff "would sustain irreparable injury through a foreclosure in terms of losing unique real property" but still affirming denial of injunctive relief); *Amicus Miami of Ohio, LLC v. Kacachos*, No. 1:22-CV-355, 2022 WL 4473465, at *2 (S.D. Ohio Sept. 26, 2022); *Sayo, Inc. v. Zions First Nat. Bank*, No. 06-CV-14963, 2006 WL 3240706, at *2 (E.D. Mich. Nov. 7, 2006). Appellee counters that such residential occupancy is "merely hypothetical" at this stage in light of the prohibition of residency that has been placed upon the Properties. (Response, Doc. 3, Pg. ID 110.)

But, even operating under the assumption that these harms are cognizable for irreparable harm purposes, Appellant faces another hurdle. Although not mentioned in the briefing, it is well established that "a" party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." *Trico Prods. Corp. v. Integrated Microelectronics USA, Inc.*, No. 24-CV-996, 2024 WL 3581793, at *3 (N.D. Ohio June 24, 2024) (quotation omitted); *see also Posey v. Garland, No. 23-CV-51, 2023 WL 5435609, at *10 (E.D. Tenn. Aug. 23, 2023) (collecting cases).* The Sixth Circuit, for instance, affirmed the reasoning of a district court within a context akin to the situation here: "the alleged harms [that the movant] would suffer from foreclosure were the direct result of [the movant's] default on the loan and . . . that self-inflicted harm is not the type that injunctions are meant to prevent." *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 104 (6th Cir. 2010). District courts within the Sixth Circuit have routinely adopted similar reasoning as a matter of course. *See, e.g., Ridi Holland LLC v. N. Holland Sylvania Rd. Ctr., LLC*, No. 3:23-CV-2334, 2024 WL 3771806, at *9 (N.D. Ohio Aug. 13, 2024); *TRBR, Inc. v. Gen. Motors, LLC*, No. 20-11269, 2022 WL 16758482, at *3 (E.D. Mich. Nov. 8, 2022); *Harris v. Ocwen Loan Servicing, Inc.*, No. 2:18-CV-2597, 2018 WL 7286207, at *4 (W.D. Tenn. Nov. 9, 2018); *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 12647019, at *14-15 (S.D. Ohio Oct. 17, 2014).

The preceding analysis and Appellee's briefing show that Appellant has failed to pay his taxes or address building code violations as to the Properties. And, as evidenced through Appellant's well-established pattern and practice of filing bankruptcy petitions that are ultimately dismissed, Appellant's allegations of harm caused by the lack of a stay

to prevent Appellee's most recent attempts to sell the Properties are self-inflicted. On this record, the Court concludes that there is no irreparable harm towards Appellant, so this factor weighs against the requested relief. Notably, even if there were irreparable harm and this factor supported relief, the Court would still find denial of the temporary restraining order appropriate due to the other factors. *See Wonderland Shopping*, 274 F.3d at 1097; *Gonzales*, 225 F.3d at 625, 632.

### III.    Balance of Equities and Public Interest

"The final two factors—the balance of equities and the public interest—merge when the government opposes the issuance of a temporary restraining order because the government's interest is the public interest." *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1033 (S.D. Ohio 2020) (cleaned up). Both factors weigh against Appellant's Motion for a Temporary Restraining Order. Appellant's property interests here are significant. However, Appellee's interests in enforcing the payment of property taxes and preventing additional delay in this matter, which has dragged on for well over a decade, must also be considered. *See In re Williams*, No. 2:14-CV-11844, 2014 WL 4658500, at *6 (E.D. Mich. Sept. 17, 2014) ("It goes without saying that payment of real property taxes is necessary to fund public services; there is strong public interest in allowing the Treasurer to collect property taxes that are due and to use lawful remedies to do so."); *Bell v. Rankin*, No. 2:11-CV-168, 2011 WL 761544, at *4 (S.D. Ohio Feb. 24, 2011) ("A TRO would only serve to further delay and burden the County."). As the Response states, Appellee "has been prevented [from enforcing] its statutory authority regarding the [P]roperties for over a decade." (Response, Doc. 3, Pg. ID 110.) While Appellant argues that Appellee will suffer

15

"no harm" if his proposed sale is consummated, this contention ignores that his request for a stay, the issue at hand, will cause harm. (*See* Reply, Doc. 4, Pg. ID 118.) As Appellee states, any added delay caused by a stay would create yet another hindrance to the payment of taxes on these Properties. (Response, Doc. 3, Pg. ID 111.) Additionally, Appellee argues that a stay of the sales' consummation would create a risk that potential buyers will withdraw their bids, causing greater delay and cost to the county. (*Id.*)

Further, "the public . . . has an interest in the remediation of safety and nuisance issues" involving blighted structures like the ones at issue here. *Premoh v. City of Cincinnati*, No. 1:15-CV-265, 2016 WL 451357, at *4 (S.D. Ohio Feb. 4, 2016). A stay of the sales would postpone such repairs to the Properties. (Response, Doc. 3, Pg. ID 111.) And, while Appellant's buildings are indeed historic, the record is devoid of any indication that Appellee's buyers at auction intend to demolish them, despite Appellant's claims to the contrary. (*See* Reply, Doc. 4, Pg. ID 119.) Thus, taking these considerations together, the last two factors weigh against the issuance of a temporary restraining order.

*     *     *

For the foregoing reasons, the Court finds that Appellant has failed to establish any of the factors to support a temporary restraining order. Accordingly, Appellant's Motion for a Temporary Restraining Order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND
DATE: November 26, 2025 at 11:57 AM

17